IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EFRAIN MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-314 |
| | § | |
| HEMPSTEAD INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending in this Title VII discrimination case is Defendant Hempstead Independent School District's Motion for Summary Judgment (Document No. 48) and Objections to Plaintiff's Summary Judgment Evidence (Document No. 54). After considering the motions, responses, reply, supplemental reply, and applicable law, the Court concludes for the reasons that follow that Defendant's Motion for Summary Judgment should be granted.

I. Background

In November 2007, Hempstead Independent School District ("Defendant") hired Plaintiff Efrain Martinez ("Plaintiff") as a police officer, and assigned him to the middle school campus.[1] Defendant alleges that Plaintiff began having performance problems

---

[1] Document No. 48 at 3; Document No. 52, ex. A ¶ 3.

almost immediately after being hired, including tardiness, insubordination, and failure to monitor the hallways.[2] In November 2008 and November 2009, Plaintiff violated district policy by interviewing students without notifying or securing the presence of an administrator.[3] Middle school principal Amy Lacey ("Lacey") informally counseled Plaintiff about these issues during the 2008-2009 and 2009-2010 school years.[4]

On February 22, 2010, Lacey convened a formal meeting with Plaintiff to discuss Plaintiff's performance problems.[5] Director of Operations Floyd Richard ("Richard"), Superintendent Gene Glover ("Glover"), Police Chief Gerald Robinson ("Robinson"), and Plaintiff attended.[6] Lacey presented Plaintiff with a formal written reprimand, in which Lacey listed the following concerns "which arise on a frequent basis . . . that must be addressed.

> Lack of promptness to work at 7:30 AM
>
> Extended time on your personal cell phone (often during critical supervision times during lunch and dismissal)
>
> Sitting in your office during instructional periods with the door shut rather than monitoring the halls either personally or using the surveillance system

---

[2] Document No. 48 at 3; Id., ex. 6 ¶ 12.

[3] Document No. 48 at 3-4; Id., ex. 9 ¶¶ 7, 10.

[4] Document No. 48 at 3; Id., ex. 6 ¶ 12.

[5] Document No. 48 at 4; Id., ex. 9 ¶ 11.

[6] Document No. 48 at 4; Id., ex. 9 ¶ 11.

> Sleeping in your office
>
> Initiating investigations per reports to you by a parent, staff member or student without consulting Chief Robinson, Mrs. Uherek or me"[7]

Lacey also gave to Plaintiff written directives "to be implemented immediately" for improvement.[8] Among other things, Plaintiff was instructed that if a parent, staff member, or student reported an incident to him, he should consult with Lacey, Chief Robinson, or the assistant principal before initiating an investigation. Lacey warned Plaintiff in writing that if he failed to comply with the directives, he could face "severe disciplinary action up to and including termination."[9]

On March 10, 2011, high school principal Dr. Sharon Young ("Young") asked Plaintiff to investigate a reported incident of vandalism at the high school.[10] When Plaintiff arrived at the high school campus, he interviewed the complaining student, and then two other students, including a suspect.[11] Defendant's summary judgment evidence is that Plaintiff at this time interviewed two students while being in a room alone with the student without an

---

[7] Document No 48, ex. 26 at HISD/Martinez 000153.

[8] Document No. 48 at 4; Id., ex. 9 ¶ 11; Id., ex. 26 at HISD/Martinez 000153-000154.

[9] Document No. 48 at 4; Id., ex. 26 at HISD/Martinez 000154.

[10] Document No. 52 at 7; Document No. 48, ex. 3 ¶ 8.

[11] Document No. 52 at 7; Id., ex. A ¶ 9.

administrator being present, in violation of school board policy.[12] One of these students later accused Plaintiff of having threatened her "by telling her she could go to court and or jail for lying." As Director of Operations Richard later stated to Plaintiff, this left Defendant with "a situation where it's your word against a student's word."[13]

When Plaintiff returned to the high school the next morning, Director of Operations Richard instructed Plaintiff and Officer Keisha Cannon, who had been asked to assist in the investigation, not to conduct any further investigation until Richard called them to do so.[14] Officer Cannon initially complied and relocated to the break room,[15] but Plaintiff without telling or obtaining permission from Richard or anyone else in authority, again started interviewing students.[16]

The summary judgment evidence is that Director of Operations Richard conducted a formal investigation into Plaintiff's behavior and determined that Plaintiff had violated district policy as to the proper questioning of students and that he had improperly disclosed a student's name and confidential statement during an

---

[12] Document No. 48 at 5; Id., ex. 29.

[13] Document No. 48, ex. 29 at HISD/Martinez 000053.

[14] Document No. 48 at 5; Id., ex. 6 ¶ 15.

[15] Document No. 48 at 5; Id., ex. 8 ¶¶ 8-9.

[16] Document No. 48 at 5; Document No. 52, ex. A ¶ 10.

interview.[17] On March 23, 2011, Richard and Chief Robinson met with Plaintiff, and Richard issued to Plaintiff a formal Letter of Correction.[18] Among other things, the Letter of Correction informed Plaintiff that because the high school principal Dr. Young was "very disappointed with our department" due to Plaintiff's conduct during the investigation, she "asked that you only come on her [high school] campus when it's an emergency or it is absolutely necessary."[19] The letter also informed Plaintiff that Director Richard suspended Plaintiff for two days without pay.[20]

The next week, on April 1, 2011, without an emergency or order to do so, Plaintiff went on the high school campus to see Chief Robinson.[21] While there, he solicited statements about the March 10-11 incident from two high school employees.[22] When Chief Robinson learned about Defendant's presence on the high school

---

[17] Document No. 48 at 6; Id., ex. 6 ¶ 20.

[18] Document No. 48 at 6; Id., ex. 29.

[19] Document No. 48, ex. 29 at HISD/Martinez 000054.

[20] Id.  Plaintiff was suspended for March 24-25, 2011. Defendant produces payroll records that it alleges demonstrate that Plaintiff was not docked pay for either of those days. Document No. 48, exs. 6, 41.

[21] Document No. 52 at 10; Id., ex. A ¶ 14.

[22] Document No. 52 at 10; Id., ex. A ¶ 14.

campus, he recommended that Plaintiff be terminated.[23] The Superintendent terminated Plaintiff on April 7, 2011.[24]

Plaintiff, a Hispanic male born in Mexico, alleges that his suspension and termination were motivated by his race and national origin, in violation of Title VII.[25] Plaintiff also alleges that Defendant violated his constitutional right to equal protection and seeks recovery under 42 U.S.C. Section 1983.[26] Defendant moves for summary judgment.

## II. Objections

Defendant objects that Plaintiff's Declaration, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment, should be stricken as a sham affidavit because it contradicts Plaintiff's deposition testimony and is internally inconsistent.[27]

---

[23] Document No. 48 at 7; Id., ex. 7 ¶ 22.

[24] Document No. 48 at 7; Id., ex. 2 ¶ 14.

[25] Document No. 52 at 2-3. Defendant's Motion for Summary Judgment analyzes other complaints alluded to by Plaintiff in his interrogatories, including harassment, failure to promote, disparate evaluations, disparate discipline, disparate pay, and disparate vehicle assignment. Document No. 48 at 10. However, Plaintiff's Complaint and his Response to the instant motion limit his claim to Defendant's alleged violations of Title VII and § 1983 by suspending and terminating him. Document No. 52 at 2. The Court analyzes Plaintiff's claim as framed by Plaintiff, and considers the other issues only to the extent that they may bear on Plaintiff's allegations of improper suspension and termination.

[26] Document No. 33 ¶ 20 (2d Am. Complt.)

[27] Document No. 54 at 1-5.

Defendant points to a number of minor inconsistencies between Plaintiff's deposition testimony and his declaration, but these do not rise to the level of rendering the declaration a "sham affidavit" that must be stricken. See S.W.S Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495-96 (5th Cir. 1996) (recognizing the "sham affidavit" doctrine, which counsels that a party cannot defeat a motion for summary judgment using an affidavit that impeaches, without explanation, his prior sworn testimony).

Defendant also objects that Plaintiff violated Federal Rule of Civil Procedure 37(c) by making allegations in his declaration that he did not previously make in his deposition or in his responses to interrogatories. These objections are denied because Plaintiff's challenged statements in his Declaration *are* alluded to in his interrogatory responses, or the interrogatories and deposition questions were not framed so as to require Plaintiff's answers to include the challenged statements, or because the challenged statements are harmless. See FED. R. CIV. P. 37(c).

In Paragraph 5, Defendant's hearsay objections to Plaintiff's recitation of statements made to him by a student and a student's mother, and Plaintiff's statement that he received a call in which some unidentified person asked him to report to the office are sustained. In Paragraphs 6-15, Defendant's hearsay objections to Plaintiff's various recitations of statements that he claims to have made to others are sustained. Defendant's objection to the

7

photo of a phone screen attached as part of Exhibit S to Plaintiff's Response to the Motion for Summary Judgment on the grounds that it is not properly authenticated is sustained. All other objections are denied.

### III. Motion for Summary Judgment

A. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

8

admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B. Title VII and Section 1983

Title VII proscribes an employer from hiring, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment"

9

because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). If no direct evidence is presented, the claims must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id.; Jackson v. Watkins, 619 F.3d 463, 466 (5th Cir. 2010). Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a prima facie case of discrimination. Wallace, 271 F.3d at 219.

Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or

10

(2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). <u>Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.</u>, 482 F.3d 408, 411-12 (5th Cir. 2007).

Section 1983 provides that any person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . ." deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. When a plaintiff asserts an employment discrimination claim under Section 1983, courts apply the Title VII burden-shifting framework. *See* <u>Patel v. Midland Mem'l Hosp. and Med. Ctr.</u>, 298 F.3d 333, 342 (5th Cir. 2002) ("The summary-judgment test for discrimination claims under . . . § 1983 is the same as the test for discrimination claims under Title VII."); *see also* <u>Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish</u>, 327 Fed. Appx. 472, 481 (5th Cir. 2009) (applying <u>McDonnell Douglas</u> framework to § 1983 claim).

C.  <u>Analysis</u>

Since the summary judgment test for discrimination claims under § 1983 is the same as the test for discrimination under Title VII, and Plaintiff's § 1983 and Title VII claims are based on the

11

same underlying conduct, the claims are analyzed together. *See* Knatt, 327 Fed. Appx. at 481 (5th Cir. 2009) (applying McDonnell Douglas framework to § 1983 claim); Patel, 298 F.3d at 342 (5th Cir. 2002) ("The summary-judgment test for discrimination claims under . . . § 1983 is the same as the test for discrimination claims under Title VII."). Plaintiff has not produced direct evidence of discrimination, so the Court applies the McDonnell Douglas framework. *See* Wallace, 271 F.3d at 219. Plaintiff must first establish a prima facie case of discrimination by demonstrating that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004) (citing Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)). It is undisputed that Plaintiff has satisfied his burden of establishing the first three elements of his prima facie case.[28] However, Defendant argues that Plaintiff has failed to provide proof on the fourth element.

---

[28] *See* Document No. 52, ex. A ¶¶ 2-3 (Plaintiff is a Hispanic male born in Mexico); Id. (Plaintiff was certified to serve as a police officer by the Texas Commission on Law Enforcement Officer Standards and Education); Document No. 48, ex. 37 (termination letter).

Plaintiff contends that he was replaced by Eric Young, a white male hired by Defendant in October 2011 to serve as the "Resource/Peace Officer" at the middle school.[29] Defendant counters that Young did not replace Plaintiff, because Young was not hired until seven months after Plaintiff was terminated.[30] During these seven months Plaintiff pursued his administrative remedies with Defendant. Defendant then posted Plaintiff's vacant position the next day after the school board denied Plaintiff's Level III grievance and Young was hired one week later.[31] Defendant offers no evidence or explanation otherwise for its seven months' delay in posting the vacant position such as to permit an inference that Young did not replace Plaintiff. Cf. Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992) (finding new employee hired nine months after plaintiff's termination did not "replace" plaintiff for the purposes of establishing a prima facie case where business "had picked up to the extent that another employee was needed in the sales department.").[32] Defendant's further argument that Young was

---

[29] Document No. 52 at 12-13; Document No. 48, ex. 6 ¶ 29.

[30] Document No. 48 at 13.

[31] See Document No. 48, ex. 4 ¶¶ 12-14 (board unanimously denied Plaintiff's appeal on October 17, 2011); Document No. 52, ex. U (job posting for "Resource/Police Officer" posted on October 18, 2011); Document No. 48, ex. 6 ¶ 29 (Officer Young began his employment with Defendant on October 25, 2011).

[32] But see Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir. 1987) (fact that plaintiff was not replaced until several months after his discharge "substantially weaken[ed]" his claim).

13

not Plaintiff's replacement because Defendant had modified the middle school peace officer position to include teaching responsibilities and added a preference for a B.A. in Criminal Justice is also unavailing. The summary judgment evidence is that Young did not assume any teaching responsibility in either the 2011-12 school year or in the 2012-13 school year.[33] The fact that Defendant has an expectation for Young to assume additional duties in the future does not alter the fact that Young began performing Plaintiff's former duties in October 2011. The summary judgment evidence is sufficient at least to raise a fact issue that Young was hired to replace Plaintiff.[34]

With Plaintiff having established a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. Reeves, 120 S. Ct. at 2106. Defendant's proof is that it suspended Plaintiff for violating previous verbal and written directives to refrain from interviewing

---

[33] Defendant asserts that "due to timing and certification requirements, [the Criminal Justice] class will be taught for the first time in the 2013-2014 school year." Document No. 55 at 9 n. 10.

[34] See Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 & n.10 (6th Cir. 1990) (In work force reduction context, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. . . . Of course an employer could not avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability."); cf. McGovern v. Transamerica Ins. Fin. Corp., 854 F. Supp. 393, 399 (D. Md. 1993) (new employee hired six months after plaintiff's termination did not "replace" plaintiff where new employee assumed only 5% of plaintiff's former duties).

students without first notifying and securing the presence of an administrator,[35] and that it terminated Plaintiff when, less than a week later, he violated yet another written directive by returning to the high school campus.[36] Defendant has satisfied its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's suspension and termination.

Plaintiff argues that Defendant's non-discriminatory reasons for terminating him are pretextual, relying on a disparate treatment theory.[37] "Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct." Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011) (citing Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009); Wallace, 271 F.3d at 221). The "nearly identical" standard is a stringent one, and excludes employees with "different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records." Beltran v. Univ. of Tex. Health Sci. Ctr. at Houston, 837 F. Supp. 2d 635, 642 (S.D. Tex. 2011) (Miller, J.) (citing Lee, 574 F.3d at 259-60). To be "nearly identical," a co-worker must have committed the same type of violation as the aggrieved employee. Okoye, 245 F.3d at 514

---

[35] Document No. 48 at 17; Id., exs. 26, 29.

[36] Document No. 48 at 17-18; Id., ex. 35.

[37] Document No. 52 at 16-21.

15

(plaintiff could not compare herself to three co-workers who were not fired despite committing violations because, unlike plaintiff, the co-workers were not accused of assault). Plaintiff contends that Officers Donnie Mordecai, Gerald Robinson, Malcolm Pryor, Joseph Williams, and Keisha Cannon were similarly situated comparators who received more favorable treatment than Plaintiff.[38]

Officer Mordecai, who was Police Chief, is not an appropriate comparator for Plaintiff because he was Plaintiff's supervisor, and therefore was not "similarly situated" to Plaintiff.[39] See Lee, 574 F.3d at 259-60 (employees with different supervisors and work responsibilities are not "similarly situated"); Vaughn, 665 F.3d at 637 (retail bankers who reported to plaintiff were not appropriate comparators).

Officer Robinson was promoted to succeed Mordecai as Police Chief in January 2010, and therefore--as Plaintiff's supervisor--was not "similarly situated" to Plaintiff after that time.[40] Plaintiff asserts, without any corroboration, that Robinson improperly interviewed students when he had previously served as an

---

[38] Id. at 14-15.

[39] Officer Mordecai was the Chief of Police of Hempstead ISD, and directly supervised Plaintiff, a police officer, from the beginning of Plaintiff's employment in November 2007 until Mordecai's resignation in 2009. Document No. 48, ex. 6 ¶ 11.

[40] Document No. 48, ex. 7 ¶ 6.

16

officer.[41] Plaintiff presents no evidence, however, that Defendant had knowledge of Robinson's alleged violations. Wallace, 271 F.3d at 221 (employees were not similarly situated to plaintiff where no one in a supervisory capacity was aware of their actions). Moreover, Robinson had received no prior written warnings, while Plaintiff was issued two written warnings before his termination.[42] See Beltran, 837 F. Supp. 2d at 642 (employees with different disciplinary records are not considered "nearly identical"). Plaintiff therefore fails to present proof that Robinson is a comparator who was the beneficiary of disparate treatment by Defendant.

Officer Pryor, who was hired about the same time as Plaintiff but who resigned in 2008 after one year as an officer, did have the same job responsibilities as Plaintiff. Pryor had no written disciplinary warnings during his one year of employment.[43] And again, Plaintiff presents no evidence that the school district had knowledge that Pryor conducted improper interviews as asserted by

---

[41] Plaintiff asserts in his declaration that "on many occasions," he "personally saw" Officer Robinson conduct interviews without an administrator present, and that on one occasion, he assisted Officer Robinson in conducting such interviews. However, Plaintiff does not allege when these events took place, nor does he claim that he or anyone else reported the violations to any supervisor or school authority. Document No. 52, ex. A ¶ 12.

[42] See Document No. 52, ex. C at 48-49 (no verbal or written complaints against Robinson).

[43] See Document No. 52, ex. C at 25-28 (Pryor had verbal warnings and a written schedule, but no written complaints).

17

Plaintiff. Hence, Plaintiff has not established that Pryor was "similarly situated" to Plaintiff.

Officer Williams, a white male, also had the same job responsibilities as Plaintiff and, like Plaintiff, had written warnings in his disciplinary record. Moreover, just as it did in Plaintiff's case, Defendant terminated Officer Williams when he committed a third violation after having received two previous written warnings. This summary judgment evidence does not permit an inference of preferential treatment for Williams compared to Plaintiff.[44] Moreover, the summary judgment evidence does not show that Defendant terminated these two men for "nearly identical conduct," which also disqualifies Williams as an appropriate comparator.

Finally, Plaintiff has not shown Officer Cannon to be "similarly situated" to Plaintiff. At the time Cannon improperly asked questions of a student on March 11, she had received no prior written or verbal warnings for misconduct.[45] There is also a difference in the relative culpability of Plaintiff and Cannon on the morning of March 11. The summary judgment evidence is that Director Richard instructed Plaintiff and Cannon that morning to

---

[44] See Document No. 52, ex. W; Document No. 48, ex. 7 ¶ 13; Id., ex. 44.

[45] See Document No. 52, ex. C at 53-54 (no verbal or written complaints against Cannon, other than "medical situation where she has missed some time from work").

wait until Richard called them. Cannon relocated herself to the break room to await Richard's call. The testimony is in conflict as to all of what happened next but, viewed in the light most favorable to Plaintiff, Plaintiff initiated an interview with a student in the presence of a school nurse, and later on Richard's instruction took the student to the room where Cannon was waiting. Cannon, who had worked for Defendant for only a little more than six months, states without contradiction that she became "uncomfortable, because [she] was concerned about Officer Martinez asking a student questions without an administrator around," but tried "not to be disrespectful, especially to a person with more seniority." Then Cannon also asked the student "a couple more questions and asked her to write the names of her softball teammates on the back of her statement." The uncontroverted evidence is that Cannon left the room to locate Director Richard so that he could join the student interviews.[46] It appears uncontroverted that both Plaintiff and Cannon violated school board policy, but Cannon's conduct overall was materially different from Plaintiff's and, especially with her having had no prior written warnings for misconduct, Cannon is not an appropriate comparator. See Wallace, 271 F.3d at 221 ("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and

---

[46] Id., ex. 8 ¶ 10.

19

that of those alleged to be similarly situated accounts for the difference in treatment received from the employer.").

In sum, Plaintiff has failed to raise a genuine issue of material fact that Defendant's reasons for terminating him were pretextual. Because there is no evidence that Plaintiff's race or national origin was either the reason or a motivating factor for Defendant's termination of Plaintiff's employment, Defendant is entitled to summary judgment.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Hempstead Independent School District's Motion for Summary Judgment (Document No. 48) is GRANTED, and Plaintiff Efrain Martinez's claims are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 25TH day of July, 2013.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE